# EXHIBIT B

311403

ENDORSED FILED
SAN MATEO COUNTY

JUN 2 4 2016

Clerk of the Superior Court
By____JORDAN MAXWELL____
DEPUTY CLERK

1  CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
   Todd D. Carpenter (CA 234464)
2  402 West Broadway, 29th Floor
   San Diego, California 92101
3  Telephone: 619.756.6994
   Facsimile: 619.756.6991
4  tcarpenter@carlsonlynch.com

5  *Attorney for Plaintiff Jose Palomino*
   *and Proposed Class Counsel*
6

7

8                  SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SAN MATEO

10
   JOSE PALOMINO, on behalf of himself and all      Case No.
11 others similarly situated,                                        16CIV00138

12                                                  COMPLAINT
            Plaintiff,
13                                                  CLASS ACTION

14 vs.                                                1. Violation of New Jersey's Truth-in-
                                                        Consumer Contract, Warranty and Notice
15 FACEBOOK, INC., a DELAWARE                            Act, N.J.S.A. 56:12-14, *et seq.*
   corporation, and DOES 1- 50, inclusive,
16                                                  DEMAND FOR JURY TRIAL

17          Defendant.

18

19

20

21

22

23

24

25

26

27

28

───────────────────────────────
                    COMPLAINT

1    Plaintiff JOSE PALOMINO brings this action on behalf of himself and all others similarly

2    situated against FACEBOOK, INC. ("Defendant" or "Facebook"), and states:

3    **I.     NATURE OF ACTION**

4        1.      Plaintiff, a citizen of New Jersey, brings this action individually and on behalf of all other

5    similarly situated New Jersey citizens against Facebook, alleging violations of the New Jersey Truth-in-

6    Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et. seq.*

7        2.      The TCCWNA was enacted specifically to prevent deception in consumer contracts,

8    warranties, notices or signs and to incentivize businesses to draft documents that are clear and

9    understandable to all consumers, and that clearly explain the legal rights of consumers and the legal

10   responsibilities of businesses.

11       3.      Defendant operates www.facebook.com (the "Website"), a popular social networking

12   website that allows registered users to create profiles, upload photos and video, send messages and keep

13   in touch with friends, family and colleagues.   Facebook also serves as a consumer marketplace

14   connecting advertisers to consumers. The company generates billions of dollars in revenues from

15   advertising through the appropriation of the names, photographs, likenesses and identities of Plaintiffs

16   and other consumers.  While Facebook profits substantially from the use of consumer data, it attempts to

17   make itself immune from any liability it may have to New Jersey consumers, in direct contravention of

18   New Jersey law.

19       4.      In order to create a Facebook account and to access the Website, consumers must create a

20   Facebook account and/or agree to Facebook's Terms of Service.  Facebook's Terms of Service violate

21   the TCCWNA because they contain provisions that violate clearly established legal rights of Plaintiff and

22   the proposed class, and ignore the legal responsibilities of Defendant.

23       5.      Specifically, the Terms of Service contain provisions that purport to: 1) disclaim liability

24   for claims brought for Defendant's negligent, willful, malicious and wanton misconduct; 2) bar claims

25   for personal and economic injury and punitive damages; and 3) ban consumers from asserting claims

26   against Defendant for deceptive and fraudulent conduct.   All of the aforementioned provisions are in

27   direct contravention of rights afforded to Plaintiff and the proposed class under New Jersey law.

28       6.      The inclusion of these violative provisions in the Terms of Service deceives consumers

1    into thinking that they are enforceable and accordingly, gives consumers the impression that they are

2    unable to enforce rights they otherwise have under New Jersey statutory and common law.

3         7.      As a result of Defendant's illegal conduct, Plaintiff, on behalf of himself and the Class,

4    seeks statutory penalties, actual damages, attorneys' fees, costs of suit, and any additional legal or

5    equitable relief the Court deems appropriate.

6    **II.    JURISDICTION AND VENUE**

7         8.      This Court has jurisdiction of this Action pursuant to the California Code of Civil

8    Procedure §410.10 because this Court has general subject matter jurisdiction and no applicable statutory

9    exception to jurisdiction exists.

10        9.      This Court has personal jurisdiction over the Defendant named in this action because

11   Defendant is headquartered in California and maintains its principal place of business in California.

12   Defendant maintains such minimum contacts with California to make this Court's exercise of jurisdiction

13   proper.  Defendant engages in continuous and systematic business operations within this State and

14   maintains offices throughout the State, including within this County.

15        10.     Venue is proper in this Court because Defendant maintains its principal place of business

16   within this County, transacts substantial business within this County, and the events giving rise to the

17   lawsuit occurred in substantial part within this County.

18   **III.   PARTIES**

19        11.     Plaintiff is and, at all times relevant hereto, was, a resident and citizen of the State of New

20   Jersey. Plaintiff created an account with Facebook on or around November 2007 and has maintained that

21   account at all relevant times.

22        12.     Defendant Facebook, Inc. is a publicly traded company headquartered at 1601 Willow

23   Road, Menlo Park, California 94025, and is a citizen of California.

24   **IV.    RELEVANT LAW AND STATUTES**

25        **A.     The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act**

26        13.     The TCCWNA was enacted over thirty years ago to protect New Jersey consumers

27   because "[f]ar too many consumer contracts, warranties, notices and signs contain provisions which

28   clearly violate the rights of consumers.  Even though these provisions are legally invalid or

1  unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into

2  thinking that they are enforceable and for this reason the consumer often fails to enforce his rights."

3  Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2.

4      14.     The primary goal of the TCCWNA is to prevent confusion and deception among

5  consumers as to both their legal rights, and the responsibilities of businesses operating in New Jersey.

6  The TCCWNA accomplishes this goal in three ways.

7      15.     First, "No seller, lessor, creditor, lender or bailee shall in the course of his business offer

8  to any consumer or prospective consumer or enter into any written consumer contract or give or display

9  any written consumer warranty, notice or sign after the effective date of this act which includes any

10  provision that violates any clearly established legal right of a consumer or responsibility of a seller,

11  lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the

12  consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A. 56:12-15.

13      16.     Second, the TCCWNA prohibits any provision in a consumer contract, warranty, sign or

14  notice from requiring the consumer to waive his or her rights under the TCCWNA. N.J.S.A. 56:12-16.

15      17.     Third, the TCCWNA provides that a contract, warranty, sign or notice cannot state in a

16  general, non-particularized fashion that some of its provisions may be void, inapplicable, or

17  unenforceable in some states, without specifying whether the provisions are void, inapplicable or

18  unenforceable in New Jersey. *Id.*

19      18.     The TCCWNA broadly defines "consumer" to include "*any* individual who buys, leases,

20  borrows, or bails *any* money, property or service which is primarily for personal, family or household

21  purposes." N.J.S.A. 56:15 (emphasis added)

22      19.     A "consumer notice" is any "written or printed announcement."  N.J.S.A. 56:12-15;

23  *Shelton v. Restaurant.com, Inc.* 70 A.3d 544, 558 (NJ. 2013).

24      20.     Any person who violates the TCCWNA "shall be liable to the aggrieved consumer for a

25  civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer,

26  together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

27  **B.     Statutory and Common Law Rights of New Jersey Consumers**

28      21.     Under New Jersey common law, persons and entities have a duty to avoid unnecessary

3

COMPLAINT

1 | risk of personal and economic injury to others.   Persons harmed by negligent acts have a clearly
2 | established right to recover damages under New Jersey common law.

3 |     22.    Under New Jersey's Punitive Damages Act (the "PDA") persons are granted the right to
4 | recover punitive damages when they prove "that the harm suffered was the result of the defendant's acts
5 | or omissions and such acts or omissions were actuated by actual malice or accompanied by a wanton and
6 | willful disregard of persons who foreseeably might be harmed by those acts or omissions."  N.J.S.A.
7 | 2A:15-5.12.

8 |     23.    Under New Jersey's Consumer Fraud Act (the "CFA"), N.J.S.A. § 56:8–2 *et seq.*, persons
9 | are granted the right to recover for fraudulent and deceptive conduct.

10 |     24.    The CFA targets unlawful sales and advertising practices designed to induce consumers to
11 | purchase merchandise or real estate, and is designed to address misconduct in the marketing of
12 | merchandise and real estate whereby the consumer could be victimized by being lured into a purchase
13 | through fraudulent, deceptive, or other similar kinds of selling or advertising practices.

14 |     25.    The CFA prohibits "[t]he act, use or employment by any person of any unconscionable
15 | commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing,
16 | concealment, suppression, or omission of any material fact with intent that others rely upon such
17 | concealment, suppression or omission, in connection with the sale or advertisement of any merchandise
18 | or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person
19 | has in fact been misled, deceived or damaged thereby … [.]"  N.J.S.A. § 56:8–2.

20 |     26.    The CFA entitles any person who suffers any ascertainable loss of money or property as a
21 | result of the use or employment by another person of any method, act, or practice declared unlawful
22 | under the CFA to recover treble damages, attorneys' fees, filing fees, reasonable costs of suit, and any
23 | other appropriate legal or equitable relief.  N.J.S.A. § 56:8-19.

24 |     27.    In line with these rights, the New Jersey legislature has set forth the following examples
25 | of provisions that violate clearly established legal rights and responsibilities under the TCCWNA:
26 | "Examples of [] provisions [in violation of the TCCWNA] are those that deceptively claim that a seller or
27 | lessor is not responsible for any damages caused to a consumer, even when such damages are the result
28 | of the seller's or lessor's negligence.  These provisions provide that the consumer assumes all risks and

1     responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability."

2     Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2.

3     **V.   FACTUAL BACKGROUND**

4          **A.   Facebook Operates A Consumer Marketplace**

5          28.   Facebook is an advertising company that owns and operates the world's largest social

6     networking site, www.facebook.com, where users stay connected with each other through a suite of web

7     and mobile apps. Facebook's purpose as a business entity is to generate revenue, which is achieved

8     primarily through the sale of advertising targeted at its users.

9          29.   Facebook requires users to register on the Website in order to post content to the site,

10    establish social network relationships within the site, and view most of the content produced by other

11    users. Users receive an Internet presence on the Website where they can exchange highly personal

12    messages through text, images, audio and video, and display equally personal photos, to an explicitly

13    identified group of friends, family and acquaintances, as well as those outside of this group.

14    Facebook.com has become an integral part of the lives of hundreds of millions of people all over the

15    world.

16         30.   The Website serves as a consumer marketplace. While Facebook gives users an Internet

17    presence and provides access to its site and apps free of charge, Facebook generates revenue by selling

18    advertisement placements over its web and mobile apps to marketers to help them reach consumers on

19    Facebook based on user information appropriated by Facebook.  As such, Facebook enables marketers to

20    target consumers based on a variety of factors such gender, age, network, profile keywords, relationship

21    status, all based on the manner in which the consumer interacts with the Facebook Website.

22         31.   Facebook's single most important revenue channel is advertising and Facebook has

23    generated billions in its history, the majority of which comes from advertising, including mobile

24    advertising. During the last three months of 2015, as reported by the company in January 2016, Facebook

25    brought in $5.8 billion, $1.6 billion of which was profit generated largely from advertising revenue.

26         32.   In February 2015, Facebook announced that it had reached two million active advertisers

27    with most of the gain coming from small businesses. In March 2016, Facebook announced that it reached

28

1    three million active advertisers with more than 70% from outside the US.[1]

2        33.    According to 2015 figures from market-research website eMarketer, the average Facebook

3    user generates $12.76 in yearly advertising revenue for Facebook, up from $10.03 in 2014. That figure is

4    expected to rise still further, up to $17.50 in 2017.[2]

5        34.    American consumers are particularly critical to Facebook's ability to generate revenue:

6           Where you are matters an awful lot to how valuable you are to social
         networks, however. Break down the difference between Americans and
7           the rest of the world, and it becomes immediately obvious why the US
         receives the bulk of the attention from Facebook and Twitter. While one
8           Facebook user outside the US will make the site $7.71 this year, an
         American on the same site will earn it a whopping $48.76. A similar
9           discrepancy exists for Twitter: ARPU is $3.51 everywhere but America,
         and $24.48 there.[3]
10

11       35.    Apart from advertising revenue Facebook itself also generates revenue from the Facebook

12   Payments service which its consumer users can use to pay for apps or subscription to apps, products or

13   services with third-party companies that advertise on Facebook. Once the payment is successfully

14   processed, Facebook transfers the value of the transaction to the developer offering the content the

15

16   consumer wishes to purchase.

17       36.    Facebook Payments provide another direct link between Facebook's advertisers and

18   consumers since the consumers' payment information is linked to the Facebook platform, enabling

19   advertisers to further target users based on purchase history.

20   **B.**    **The Terms of Service Were Presented to Plaintiff and the Class**

21       37.    In order for an individual to join Facebook and use the Website, consumers must agree to

22   Facebook's "Terms of Service," the most recent version being January 30, 2015.  Before consumers can

23   create a Facebook account they must agree to the Terms of Service.

24

25   _____

26   [1] https://www.facebook.com/business/news/3-million-advertisers (last visited May 24, 2016).

27   [2] http://www.emarketer.com/Article/Social-Network-Ad-Revenues-Accelerate-Worldwide/1013015 (last visited May 19, 2016).

28   [3] https://www.theguardian.com/technology/2015/sep/25/facebook-money-advertising-revenue-should-you-be-paid (last visited May 19, 2016)

1    38.    The Terms of Service govern Facebook brands, products and services and Facebook's:

2    "goal… to deliver advertising and other commercial or sponsored content that is valuable to our users

3    and advertisers."

4    39.    Plaintiff, a Facebook user and consumer, was presented and agreed to the Terms of

5    Service.

6    40.    The class members also were presented and agreed to the Terms of Service when they

7    created their Facebook accounts and when they accessed the Website.

8    **C.    The Terms of Service Violate the TCCWNA**

9    41.    The Terms of Service presented to Plaintiff and the Class members contain provisions that

10   violate clearly established legal rights and responsibilities, and that state in a general non-particularized

11   fashion that they are void, inapplicable or unenforceable in some jurisdictions, without stating whether

12   they are void, inapplicable or unenforceable in New Jersey.

13   42.    The Terms of Service state, "OUR AGGREGATE LIABILITY ARISING OUT OF THIS

14   STATEMENT OR FACEBOOK WILL NOT EXCEED THE GREATER OF ONE HUNDRED

15   DOLLARS ($100) OR THE AMOUNT YOU HAVE PAID US IN THE PAST TWELVE MONTHS.

16   APPLICABLE LAW MAY NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY OR

17   INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR

18   EXCLUSION MAY NOT APPLY TO YOU. IN SUCH CASES, FACEBOOK'S LIABILITY WILL BE

19   LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW."

20   43.    This provision violates clearly established legal rights of Plaintiff and the Class, and legal

21   responsibilities of Defendant under New Jersey law.

22   44.    This provision violates Plaintiff's and the Class's clearly established legal right to fully

23   recover from Defendant for tortious conduct that causes personal or economic injury and to recover full

24   damages for Defendant's violations of the CFA. This provision also violates Plaintiff's and the Class's

25   clearly established legal right to seek punitive damages under the PDA for Defendant's malicious,

26   wanton or willful misconduct. Likewise, this provision violates Defendant's duty to refrain from causing

27   personal or economic injury through its own negligent, reckless, willful, malicious or wanton

28   misconduct, and Defendant's clearly established legal responsibility to refrain from engaging in

1  deception and fraud.

2      45.    Although the provision states that "APPLICABLE LAW MAY NOT ALLOW THE
3  LIMITATION OR EXCLUSION OF LIABILITY OR INCIDENTAL OR CONSEQUENTIAL
4  DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU. IN
5  SUCH CASES, FACEBOOK'S LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT
6  PERMITTED BY APPLICABLE LAW," it fails to state whether the limitation is inapplicable or void in
7  New Jersey.

8      46.    Further, the Terms of Service state that "[y]ou will resolve any claim, cause of action or
9  dispute (claim) you have with us arising out of or relating to this Statement or Facebook exclusively in
10 the U.S. District Court for the Northern District of California or a state court located in San Mateo
11 County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating
12 all such claims. The laws of the State of California will govern this Statement, as well as any claim that
13 might arise between you and us, without regard to conflict of law provisions."

14     47.    Pursuant to N.J.S.A. 56:12-16, "[n]o consumer contract, warranty, notice or sign, as
15 provided for in this act, shall contain any provision by which the consumer waives his rights under this
16 act." The choice of law provision in the Terms of Service violate this section of the TCCWNA because
17 it constitutes an improper waiver of Plaintiff's and proposed Class members' rights under New Jersey
18 law.

19     48.    Accordingly, the Terms of Service violate the TCCWNA.

20 **VI.    CLASS ALLEGATIONS**

21     49.    <u>Class Definition</u>: Plaintiff brings this class action on behalf of himself and all others
22 similarly situated pursuant to California Code of Civil Procedure § 382, on behalf of all New Jersey
23 residents who created a Facebook account, and/or who, agreed to the Terms of Service within the
24 applicable statute of limitations. Excluded from the Class are Defendant and its officers, directors and
25 employees, the Court, the Court's immediate family and all Court staff, and Plaintiff's attorneys and their
26 immediate family members.

27     50.    <u>Numerosity:</u> The class described above is so numerous that joinder of all individual
28 members in one action would be impracticable. On information of belief, hundreds, if not thousands of

1   New Jersey residents have created a Facebook account and/or agreed to the Terms of Service. The

2   disposition of the individual claims of the respective class members through this class action will benefit

3   both the parties and this Court, and will facilitate judicial economy.

4       51.   Ascertainability: The class is ascertainable because, on information and belief, Defendant

5   keeps and collects the information of each class member in a detailed electronic database, and records

6   when class members create a Facebook account and/or agree to the Terms of Service.

7       52.   Typicality: Plaintiff's claims are typical of the claims of the members of the class. The

8   claims of the Plaintiff and members of the class are based on the same legal theories and arise from the

9   same unlawful conduct. The claims of Plaintiff and the Class arise from the same provisions which

10  uniformly are displayed in the Terms of Service. As such, the claims of Plaintiff and the Class rise and

11  fall together and are typical of one another.

12      53.   Common Questions of Fact and Law Predominate: There are numerous question of law

13  or fact common to all class members. For example, whether the provisions at issue violate clearly

14  established law is a question common to all class members, and this question is susceptible to a common

15  answer. Similarly, whether the Terms of Service is a consumer contract or notice is a question common

16  to all class members, and this question is susceptible to a common answer. These questions and others

17  like them predominate over individual issues. The same evidence needed to prove Plaintiff's individual

18  claims will be used to prove the claims of all class members.

19      54.   Adequacy of Representation: Plaintiff is an adequate representative of the class because

20  his interests do not conflict with the interests of the members of the class. Plaintiff will fairly,

21  adequately, and vigorously represent and protect the interests of the members of the class and has no

22  interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and

23  experienced in the prosecution of complex consumer class action litigation.

24      55.   Superiority: The injury sustained by each Class member, while meaningful on an

25  individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions

26  against Defendant. Even if it were economically feasible, requiring myriad injured plaintiffs to file

27  individual suits would impose a crushing burden on the court system and almost certainly lead to

28  inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and

provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

56.     Class certification also is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

**VII.   CAUSES OF ACTION**

**CAUSE OF ACTION**
**Violation of Truth-in-Consumer Contract, Warranty and Notice Act**
**N.J.S.A. 56:12-14, *et seq*.**

57.     The allegations contained in the previous paragraphs are incorporated by reference.

58.     Defendant is a "seller, lessor, creditor, lender or bailee" under the TCCWNA.  N.J.S.A. 56:12-15.

59.     Plaintiff is a "consumer" under the TCCWNA.  *Id.*

60.     The Terms of Service are a "consumer contract" or "consumer notice or sign" under the TCCWNA.  N.J.S.A. 56:12-1.

61.     The Terms of Service violate the TCCWNA because they include provisions that violate clearly established legal rights and responsibilities.  N.J.S.A. 56:12-15.

62.     The Terms of Service contain provisions, as detailed above, that purport to disclaim liability for harm caused 1) by Defendant's negligence, 2) by Defendant's acts that violate the CFA, and 3) by Defendant's malicious, willful or wanton misconduct.   The Terms of Service also contain provisions that preclude claims for punitive damages.   *Id.*Further, the Terms of Service contain provisions, as detailed above, that state in a general non-particularized fashion that some provisions are inapplicable or void in some jurisdictions without stating which provisions are inapplicable or void in New Jersey. N.J.S.A. 56:12-16.

63.     The Terms of Service further contain a provision that constitutes an impermissible waiver of New Jersey law pursuant to N.J.S.A. 56:12-16, which provides that "[n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act."

64.     Pursuant to N.J.S.A. 56:12-17, Plaintiff and the Class are entitled to a civil penalty of not

1   less than $100.00, or for actual damages, or both, together with reasonable attorney's fees and court

2   costs, and any additional relief the court deems appropriate.

**PRAYER FOR RELIEF**

65.     Wherefore, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests that this Court award relief against Defendant as follows:

      a.    A declaratory judgment that the Terms of Service are in violation of N.J.S.A. 56:12-15 and 56:12-16;

      b.    Injunctive relief requiring the removal from the Terms of Service the language declared in violation of N.J.S.A. 56:12-15 and 56:12-16;

      c.    An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing his counsel as class counsel;

      d.    Payment of at least $100, actual damages, or both, to Plaintiff and each class member;

      e.    Payment of reasonable attorneys' fees and court costs; and

      f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

**VIII.   DEMAND FOR JURY TRIAL**

66.     Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: June 22, 2016

                    CARLSON LYNCH SWEET KILPELA
                      & CARPENTER, LLP

                    *T. Carpenter /BCC*

                    Todd D. Carpenter (CA 234464)
                    Brittany C. Casola (CA 306561)
                    402 West Broadway, 29th Floor
                    San Diego, California 92101
                    Telephone: (619) 347-3517
                    Facsimile: (619) 756-6990
                    tcarpenter@carlsonlynch.com

                    Katrina Carroll
                    Kyle A. Shamberg
                    LITE DEPALMA GREENBERG LLC
                    211 W. Wacker Drive, Suite 500
                    Chicago, IL 60606
                    Telephone: (312) 750-1265
                    kcarroll@litedepalma.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gary F. Lynch
R. Bruce Carlson
Kevin Abramowicz
CARLSON LYNCH SWEET KILPELA &
CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
bcarlson@carlsonlynch.com
glynch@carlsonlynch.com

Attorneys for Plaintiff and the Putative Class