**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
tcarpenter@carlsonlynch.com

**GLAPION LAW FIRM**
Jeremy M. Glapion (*pro hac vice* to be filed)
1704 Maxwell Drive
Wall, New Jersey 07719
Telephone: 732.455.9737
Facsimile: 732.709-5150
jmg@glapionlaw.com

*Attorneys for Plaintiffs and the Putative Class*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE PALOMINO and JASON HUHN; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC., a DELAWARE corporation, and DOES 1- 50, inclusive,<br><br>Defendant. | Case No. 16-4230<br><br>**COMPLAINT**<br><br>**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**<br><br>1. **Violation of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-15.**<br>2. **Violation of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-16**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs JOSE PALOMINO AND JASON HUHN bring this action on behalf of themselves and all others similarly situated against FACEBOOK, INC. ("Defendant" or "Facebook"), and state:

## I. NATURE OF ACTION

1. Plaintiffs, both citizens of New Jersey, bring this action individually and on behalf of all other similarly situated New Jersey citizens against Facebook, alleging violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et. seq.*

2. The TCCWNA was enacted specifically to prevent deception in consumer contracts, warranties, notices or signs and to incentivize businesses to draft documents that are clear and understandable to all consumers, and that plainly explain the legal rights of consumers and the legal responsibilities of businesses.

3. Defendant operates www.facebook.com (the "Website"), a popular social networking website that allows registered users to create profiles, upload photos and video, send messages and keep in touch with friends, family and colleagues. Facebook also serves as a consumer marketplace connecting sellers and advertisers of consumer goods and services with its consumer users. The company generates billions of dollars in revenues from advertising through the appropriation of the names, photographs, likenesses and identities of Plaintiffs and other consumers. While Facebook profits substantially from the use of consumer data, it attempts to make itself immune from any liability it may have to New Jersey consumers, in direct contravention of New Jersey law.

4. In order to create a Facebook account and to access the Website, consumers must create a Facebook account and/or agree to Facebook's Terms of Service. Facebook's Terms of Service violate the TCCWNA because they contain provisions that violate clearly established legal rights of Plaintiffs and the proposed class, and ignore the legal responsibilities of Defendant.

5. Specifically, the Terms of Service contain provisions that purport to: 1) disclaim liability for claims brought for Defendant's negligent, willful, malicious and

wanton misconduct; 2) bar claims for personal and economic injury and punitive damages; and 3) ban consumers from asserting claims against Defendant for deceptive and fraudulent conduct. All of the aforementioned provisions are in direct contravention of rights afforded to Plaintiffs and the proposed class under New Jersey law.

6. The inclusion of these violative provisions in the Terms of Service deceives consumers into thinking that they are enforceable and accordingly, gives consumers the impression that they are unable to enforce rights they otherwise have under New Jersey statutory and common law.

7. Furthermore, Defendant's Terms contain a provision stating that its limitation on liability may be inapplicable in certain jurisdictions, without specifying whether or not this provision, or any other provision, is or is not applicable in New Jersey.

8. N.J.S.A. § 56:12-16 states that "[n]o consumer contract, notice, or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey."

9. As a result of Defendant's illegal conduct, Plaintiffs, on behalf of themselves and the Class, seek statutory penalties, actual damages, attorneys' fees, costs of suit, and any additional legal or equitable relief the Court deems appropriate.

## II. JURISDICTION AND VENUE

10. Plaintiff Palomino originally filed this action in the Superior Court of California, County of San Matteo, Docket No. 16CIV00138. Defendant removed the matter to this Court on July 27, 2016 pursuant to 28 U.S.C. §§ 1332, 1446 and 1453.

11. Plaintiff Huhn originally filed this action in the Superior Court of New Jersey, County of Morris. Defendant removed the matter to the United States District Court for the District of New Jersey on June 22, 2016, pursuant to 28 U.S.C. §§ 1332, 1446 and 1453. The matter was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404.

12. This Court has personal jurisdiction over the Defendant named in this action

because Defendant is headquartered in California and maintains its principal place of business in California. Defendant maintains such minimum contacts with California to make this Court's exercise of jurisdiction proper. Defendant engages in continuous and systematic business operations within the State of California and maintains offices throughout California, including within this District.

13. Venue is proper in this Court because Defendant maintains its principal place of business within this District, transacts substantial business within this District, and the events giving rise to the lawsuit occurred in substantial part within this District.

## III. PARTIES

14. Plaintiff Palomino is, and, at all times relevant hereto, was, a resident and citizen of the State of New Jersey. Plaintiff currently maintains, and maintained prior to and independent of this litigation, a Facebook account.

15. Plaintiff Huhn is, and, at all times relevant hereto, was, a resident and citizen of the State of New Jersey. Plaintiff currently maintains, and maintained prior to and independent of this litigation, a Facebook account.

16. Defendant Facebook, Inc. is a publicly traded company headquartered at 1601 Willow Road, Menlo Park, California 94025, and is a citizen of California.

## IV. RELEVANT LAW AND STATUTES

### A. The New Jersey Truth-in-Consumer Contract, Warranty and Notice Act

17. The TCCWNA was enacted over thirty years ago, in keeping with an express policy to protect New Jersey consumers, because "[f]ar too many consumer contracts, warranties, notices and signs contain provisions which clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2.

18. The primary goal of the TCCWNA is to prevent confusion and deception among consumers as to both their legal rights, and the responsibilities of businesses

operating in New Jersey. The TCCWNA accomplishes this goal in three ways.

19. First, "[n]o seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A. 56:12-15.

20. Second, the TCCWNA prohibits any provision in a consumer contract, warranty, sign or notice from requiring the consumer to waive his or her rights under the TCCWNA. N.J.S.A. 56:12-16.

21. Third, the TCCWNA provides that a contract, warranty, sign or notice cannot state in a general, non-particularized fashion that some of its provisions may be void, inapplicable, or unenforceable in some states, without specifying whether the provisions are or are not void, inapplicable or unenforceable in New Jersey. *Id.*

22. The TCCWNA broadly defines "consumer" to include "*any* individual who buys, leases, borrows, or bails *any* money, property or service which is primarily for personal, family or household purposes." N.J.S.A. 56:15 (emphasis added)

23. A "consumer notice" is any "written or printed announcement." N.J.S.A. 56:12-15; *Shelton v. Restaurant.com, Inc.* 70 A.3d 544, 558 (NJ. 2013).

24. Any person who violates the TCCWNA "shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

**B.     Statutory and Common Law Rights of New Jersey Consumers**

25. Under New Jersey common law, persons and entities have a duty to avoid unnecessary risk of personal and economic injury to others. Persons harmed by negligent

acts have a clearly established right to recover damages under New Jersey common law.

26. Under New Jersey's Punitive Damages Act (the "PDA") persons are granted the right to recover punitive damages when they prove "that the harm suffered was the result of the defendant's acts or omissions and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12.

27. Under New Jersey's Consumer Fraud Act (the "CFA"), N.J.S.A. § 56:8–2 *et seq.*, persons are granted the right to recover for fraudulent and deceptive conduct.

28. The CFA targets unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate, and is designed to address misconduct in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive, or other similar kinds of selling or advertising practices.

29. The CFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby … [.]" N.J.S.A. § 56:8–2.

30. The CFA entitles any person who suffers any ascertainable loss of money or property as a result of the use or employment by another person of any method, act, or practice declared unlawful under the CFA to recover treble damages, attorneys' fees, filing fees, reasonable costs of suit, and any other appropriate legal or equitable relief. N.J.S.A. § 56:8-19.

31. In line with these rights, the New Jersey legislature has set forth the following examples of provisions that violate clearly established legal rights and responsibilities under the TCCWNA: "Examples of [] provisions [in violation of the

TCCWNA] are those that deceptively claim that a seller or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence. These provisions provide that the consumer assumes all risks and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability." Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly No. 1660, page 2.

## V. FACTUAL BACKGROUND

### A. Facebook Operates a Consumer Marketplace

32. Facebook is an advertising company that owns and operates the world's largest social networking site, www.facebook.com, where users stay connected with each other through a suite of web and mobile apps. Facebook's purpose as a business entity is to generate revenue, achieved primarily through the sale of advertising targeted at its consumer users.

33. Facebook requires users to register on the Website in order to post content to the site, establish social network relationships within the site, and view most of the content produced by other users. Users receive an Internet presence on the Website where they can exchange highly personal messages through text, images, audio and video, and display equally personal photos, to an identified group of friends, family and acquaintances, as well as those outside of this group. Facebook.com has become an integral part of the lives of hundreds of millions of people all over the world.

34. The Website serves as a consumer marketplace. While Facebook gives users an Internet presence and provides access to its site and apps free of charge, Facebook generates revenue by selling advertisement placements over its web and mobile apps to sellers of consumer goods and services to help them reach consumers on Facebook based on user information appropriated by Facebook. As such, Facebook enables companies to target consumers based on a variety of factors such gender, age, network, profile keywords, relationship status, all based on the manner in which the consumer interacts with the Facebook Website.

35. Facebook's single most important revenue source is advertising and Facebook has generated billions in its history, the majority of which comes from advertising, including mobile advertising. During the last three months of 2015, as reported by Facebook in January 2016, Facebook brought in $5.8 billion, $1.6 billion of which was profit generated largely from advertising revenue.

36. In February 2015, Facebook announced that it had reached two million active advertisers with most of the gain coming from small businesses. In March 2016, Facebook announced that it reached three million active advertisers with more than 70% from outside the United States.[1]

37. According to 2015 figures from market-research website eMarketer, the average Facebook user generates $12.76 in yearly advertising revenue for Facebook, up from $10.03 in 2014. That figure is expected to rise still further, up to $17.50 in 2017.[2]

38. American consumers are particularly critical to Facebook's ability to generate revenue:

> Where you are matters an awful lot to how valuable you are to social networks, however. Break down the difference between Americans and the rest of the world, and it becomes immediately obvious why the US receives the bulk of the attention from Facebook and Twitter. While one Facebook user outside the US will make the site $7.71 this year, an American on the same site will earn it a whopping $48.76. A similar discrepancy exists for Twitter: ARPU is $3.51 everywhere but America, and $24.48 there.[3]

39. Apart from advertising revenue, Facebook also generates revenue from the Facebook Payments service which its consumer users can use to pay for apps or subscription to apps, products or services with third-party companies that advertise on Facebook. Once the payment is successfully processed, Facebook transfers the value of

---

[1] https://www.facebook.com/business/news/3-million-advertisers (last visited May 24, 2016).

[2] http://www.emarketer.com/Article/Social-Network-Ad-Revenues-Accelerate-Worldwide/1013015 (last visited May 19, 2016).

[3] https://www.theguardian.com/technology/2015/sep/25/facebook-money-advertising-revenue-should-you-be-paid (last visited May 19, 2016).

the transaction to the developer offering the content the consumer wishes to purchase.

40. Facebook Payments provide another direct link between Facebook's advertisers and consumers since the consumers' payment information is linked to the Facebook platform, enabling advertisers to further target users based on purchase history.

### B. The "Consumer" Relationship

41. Facebook's business model would not work without the right to use the personal information its users provide.

42. Accordingly, Facebook *requires*, as a condition to use Facebook.com, the user to grant it two different licenses.

43. First, when an individual joins Facebook, they are not only required to provide their information, but they are required to give Facebook a *license to use* "[the user's] name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand [user] like[s]) served or enhanced by us. This means, for example, that [user] permit[s] a business or other entity to pay us to display [user's] name and/or profile picture with [user's] content or information, without any compensation to [user]."

44. According to Facebook's data policy, "information" in the above quoted paragraph includes "information you provide when you use our Services, including when you sign up for an account, create or share, and message or communicate with others[.]"

45. In other words, a person who signed up for Facebook but never takes any other action has nonetheless provided Defendant the right to use that information for its commercial benefit.

46. Second, users are required to provide to Facebook a "a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any IP content that you post on or in connection with Facebook." "IP Content" is defined as "content that is covered by intellectual property rights, like photos and videos."

47. In other words, in exchange for ongoing access to Facebook (and to make Facebook's business model work), users give Facebook valuable consideration in the form of information and intellectual property, most importantly, licenses to use that information and content commercially. Facebook then takes that information and sells it to advertisers, in exchange for a different form of valuable consideration (i.e. money).

48. This exchange of licenses for access to Facebook, among other things, makes Plaintiffs and all putative class members "consumers."

### C. The Terms of Service Were Presented to Plaintiffs and the Class

49. In order for an individual to join Facebook, use the Website, and continue to use the Website, consumers must agree to Facebook's "Terms of Service," and continue to agree to subsequent revisions, the most recent version being January 30, 2015.

50. The Terms of Service govern Facebook brands, products and services and Facebook's: "goal… to deliver advertising and other commercial or sponsored content that is valuable to our users and advertisers."

51. Plaintiff, a Facebook user and consumer, was presented with and agreed to the Terms of Service.

52. The class members also were presented with and agreed to the Terms of Service when they created their Facebook accounts and when they accessed the Website.

### D. The Terms of Service Violate the TCCWNA

53. The Terms of Service presented to Plaintiffs and Class members contain provisions that violate clearly established legal rights and responsibilities, and that state in a general non-particularized fashion that they are void, inapplicable or unenforceable in some jurisdictions, without stating whether they are void, inapplicable or unenforceable in New Jersey.

54. The Terms of Service state, "OUR AGGREGATE LIABILITY ARISING OUT OF THIS STATEMENT OR FACEBOOK WILL NOT EXCEED THE GREATER OF ONE HUNDRED DOLLARS ($100) OR THE AMOUNT YOU HAVE PAID US IN THE PAST TWELVE MONTHS. APPLICABLE LAW MAY NOT ALLOW THE

9
FIRST AMENDED CLASS ACTION COMPLAINT

LIMITATION OR EXCLUSION OF LIABILITY OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU. IN SUCH CASES, FACEBOOK'S LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW."

55. This provision violates clearly established legal rights of Plaintiffs and the Class, and legal responsibilities of Defendant under New Jersey law.

56. This provision violates Plaintiffs' and the Class's clearly established legal right to fully recover from Defendant for tortious conduct that causes personal or economic injury and to recover full damages for Defendant's violations of the CFA. This provision also violates Plaintiffs' and the Class's clearly established legal right to seek punitive damages under the PDA for Defendant's malicious, wanton or willful misconduct. Likewise, this provision violates Defendant's duty to refrain from causing personal or economic injury through its own negligent, reckless, willful, malicious or wanton misconduct, and Defendant's clearly established legal responsibility to refrain from engaging in deception and fraud.

57. Thus, this provision violates N.J.S.A. § 56:12-15.

58. Although the provision states that "APPLICABLE LAW MAY NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU. IN SUCH CASES, FACEBOOK'S LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW," it fails to state whether the limitation is inapplicable or void in New Jersey.

59. Thus, this provision separately and independently violates N.J.S.A. § 56:12-16, which states that "[n]o consumer contract, notice, or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the

State of New Jersey."[4]

60. Further, the Terms of Service state that "[y]ou will resolve any claim, cause of action or dispute (claim) you have with us arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions."

61. Pursuant to N.J.S.A. 56:12-16, "[n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act."  The choice of law provision in the Terms of Service violate this section of the TCCWNA because it constitutes an improper waiver of Plaintiff's and proposed Class members' rights under New Jersey law.

62. Accordingly, the Terms of Service violate the TCCWNA.

**VI.   CLASS ALLEGATIONS**

63. <u>Class Definition</u>: Plaintiffs bring this class action on behalf of himself and all others similarly situated New Jersey residents who created a Facebook account, and/or who, agreed to the Terms of Service within the applicable statute of limitations. Excluded from the Class are Defendant and its officers, directors and employees, the Court, the Court's immediate family and all Court staff, and Plaintiffs' attorneys and their immediate family members.

64. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  On information of belief, millions of New Jersey residents have created a Facebook account and/or agreed to the Terms of Service.  The disposition of the individual claims of the respective class

---

[4] Importantly, it does not matter for the purposes of N.J.S.A. § 56:12-16 whether or not any provision is or is not enforceable in New Jersey. All that matters is that the agreement stated that it may not be enforceable in some jurisdictions, without specifying whether it *is* or *is not* enforceable in New Jersey.

members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

65. <u>Ascertainability:</u> The class is ascertainable because, on information and belief, Defendant keeps and collects the information of each class member in a detailed electronic database, and records when class members create a Facebook account and/or agree to the Terms of Service.

66. <u>Typicality:</u>  Plaintiffs' claims are typical of the claims of the members of the class.  The claims of Plaintiffs' and the members of the class are based on the same legal theories and arise from the same unlawful conduct.  The claims of Plaintiffs and the Class arise from the same provisions which uniformly are displayed in the Terms of Service.  As such, the claims of Plaintiffs and the Class rise and fall together and are typical of one another.

67. <u>Common Questions of Fact and Law Predominate:</u>   There are numerous question of law or fact common to all class members.  For example, whether the provisions at issue violate clearly established law is a question common to all class members, and this question is susceptible to a common answer.  Similarly, whether the Terms of Service is a consumer contract, notice, or sign is a question common to all class members, and this question is susceptible to a common answer.  These questions and others like them predominate over individual issues.  The same evidence needed to prove Plaintiffs' individual claims will be used to prove the claims of all class members.

68. <u>Adequacy of Representation:</u>  Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class.  Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer class action litigation.

69. <u>Superiority:</u> The injury sustained by each Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to

prosecute individual actions against Defendant. Even if it were economically feasible, requiring myriad injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

70. Class certification also is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Truth-in-Consumer Contract, Warranty and Notice Act
### N.J.S.A. § 56:12-15.

71. The allegations contained in the previous paragraphs are incorporated by reference.

72. Defendant is a "seller, lessor, creditor, lender or bailee" under the TCCWNA. N.J.S.A. 56:12-15.

73. Plaintiffs are "consumers" under the TCCWNA. *Id.*

74. The Terms of Service are a "consumer contract", notice and/or sign under the TCCWNA. N.J.S.A. 56:12-1.

75. The Terms of Service violate the TCCWNA because they include provisions that violate clearly established legal rights and responsibilities. N.J.S.A. 56:12-15.

76. The Terms of Service contain provisions, as detailed above, that purport to disclaim liability for harm caused 1) by Defendant's negligence, 2) by Defendant's acts that violate the CFA, and 3) by Defendant's malicious, willful or wanton misconduct. The Terms of Service also contain provisions that preclude claims for punitive damages. *Id.*

77. Pursuant to N.J.S.A. 56:12-17, Plaintiffs and the Class are entitled to a civil penalty of not less than $100.00, or for actual damages, or both, together with reasonable

attorney's fees and court costs, and any additional relief the court deems appropriate.

## SECOND CAUSE OF ACTION

### Violation of Truth-in-Consumer Contract, Warranty and Notice Act
### N.J.S.A. § 56:12-16.

78. The allegations contained in the previous paragraphs are incorporated by reference.

79. The Terms of Service contain provisions, as detailed above, that state in a general non-particularized fashion that some provisions are inapplicable or void in some jurisdictions without stating which provisions are inapplicable or void in New Jersey. N.J.S.A. 56:12-16.

80. The Terms of Service further contain a provision that constitutes an impermissible waiver of New Jersey law pursuant to N.J.S.A. 56:12-16, which provides that "[n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act."

81. Pursuant to N.J.S.A. 56:12-17, Plaintiffs and the Class are entitled to a civil penalty of not less than $100.00, or for actual damages, or both, together with reasonable attorney's fees and court costs, and any additional relief the court deems appropriate.

## PRAYER FOR RELIEF

82. Wherefore, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, requests that this Court award relief against Defendant as follows:

   a. A declaratory judgment that the Terms of Service are in violation of N.J.S.A. 56:12-15 and 56:12-16;

   b. Injunctive relief requiring the removal from the Terms of Service the language declared in violation of N.J.S.A. 56:12-15 and 56:12-16;

   c. An Order certifying the class proposed by Plaintiffs, and naming Plaintiffs as class representatives and appointing their counsel as class counsel;

   d. Payment of at least $100, actual damages, or both, to Plaintiffs and each class member;

   e. Payment of reasonable attorneys' fees and court costs; and

   f. The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

83. Plaintiffs hereby demand a jury trial for all of the claims so triable.

Dated: September 16, 2016

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

/s/ Todd D. Carpenter
Todd D. Carpenter (CA 234464)
Brittany C. Casola (CA 306561)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6990
tcarpenter@carlsonlynch.com

Gary F. Lynch
R. Bruce Carlson
Kevin Abramowicz
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
bcarlson@carlsonlynch.com
glynch@carlsonlynch.com


**LITE DEPALMA GREENBERG LLC**
Katrina Carroll (*pro hac vice*)
Kyle A. Shamberg
211 W. Wacker Drive, Suite 500
Chicago, IL 60606
Telephone: (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com
Jeremy M. Glapion (*pro hac vice* to be filed)

**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com



*Attorneys for Plaintiffs and the Putative Class*